WRIGHT, FINLAY & ZAK, LLP
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Rock K. Jung, Esq.
Nevada Bar No. 10906
7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
(702) 475-7964; Fax: (702) 946-1345
rjung@wrightlegal.net
*Attorneys for Plaintiff/Counter-Defendant, Wilmington Trust Company, as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2007-1; and Cross-Defendants, Nationstar Mortgage, LLC and Mortgage Electronic Registration Systems, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| WILMINGTON TRUST COMPANY, AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-1,<br><br>      Plaintiff,<br><br>   vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company; CLUB AT MADEIRA CANYON UNIT OWNERS' ASSOCIATION; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>      Defendants. | Case No.: 2:16-cv-00326-RFB-PAL<br><br>**PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CAPTION** |
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,<br><br>      Counter/Cross-Claimant,<br><br>   vs.<br><br>WILMINGTON TRUST COMPANY, AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-1; NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; | |

| | |
|---|---|
| 1 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, as nominee beneficiary for PULTE MORTGAGE, LLC; HAMLET McNEACE, an individual; and SHAWN McNEACE, an individual, |
| 2 | |
| 3 | |
| 4 | |
| 5 | Counter/Cross-Defendants. |

**MOTION TO AMEND COMPLAINT AND CAPTION**

**I.      INTRODUCTION**

Plaintiff/Counterdefendant Wilmington Trust Company, as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2007-1, by and through their attorneys of record, Edgar C. Smith, Esq., and Rock K. Jung, Esq., of the law firm of Wright, Finlay & Zak, LLP, hereby moves for leave to amend its Complaint and to amend the caption to reflect the new parties.

**II.      ARGUMENT**

Federal Rules of Civil Procedure  ("F.R.C.P.") 15(a)(2), 15(d) and 20 in federal court permits a party to amend its pleading by leave of court and states that "leave shall be freely given when justice so requires."  F.R.C.P. 15(a).  The Ninth Circuit has similarly held that the policy of freely granting leave to amend "is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).  "In exercising its discretion a court must be guided by the underlying purpose of Rule 15 — to facilitate decision on the merits rather than on the pleadings or technicalities."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).  Therefore, a party shall be given leave to amend freely provided there is no existing bad-faith factors such as undue delay, bad faith or dilatory motive on the part of the movant seeking leave.  *3* MOORE'S FEDERAL PRACTICE - CIVIL § 15.14 (2011) (analyzing F.R.C.P. 15(a) and stating that "[d]enial of leave to amend is disfavored; and a district judge should grant leave absent a substantial reason to deny").

Here, applying these well-established principles, the Court should grant Plaintiff's request for leave to amend.  Justice requires leave to amend, as the subject HOA and its sales

trustee Nevada Association Services, Inc. ("NAS") proceeded to sell the Property without, *inter alia*, proper notice and also including improper fees. Further, the Nevada Supreme Court's recent decision in <u>Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC</u>, 132 Nev. Adv. Op. 35 (April 28, 2016) ("<u>Ikon</u>") and <u>Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp, Inc.</u>, 132 Nev. Adv. Op. 5 (Jan. 28, 2016) ("<u>Shadow Wood</u>")has substantially changed the law of HOA sales, regarding recitals, amounts that comprise the super-priority lien portion, and the pleadings should appropriately be amended to reflect the state of the law after that decision. Plaintiff's current action against just Defendant SFR INVESTMENTS POOL 1, LLC ("SFR"), and Defendant CLUB AT MADEIRA CANYON UNIT OWNERS' ASSOCIATION (the "HOA") is untenable as it stands, as colorable claims also exist against the HOA's sales trustee/agent NAS. In the <u>Shadow Wood</u> case, an end was brought to the past arguments by buyers that relied solely on the recitals in an HOA foreclosure deed to establish quiet title in favor of the buyer. Plus the <u>Shadow Wood</u> decision demonstrates genuine issues of material fact related to fees and costs, commercial reasonableness, and the circumstances surrounding the HOA Sale need to be explored in discovery. Meanwhile, in the <u>Ikon</u> case, the Nevada Supreme court stated that the super-priority lien is ONLY 9 months of dues and nothing more. Thus, the Court soundly rejected the HOA's argument that they must be able to have collection fees and costs.

These recent developments as well as the fact that Plaintiff, HOA and the HOA Trustee are still waiting to have a NRED mediation scheduled, makes vital the allegations in Plaintiff's Amended Complaint that NAS- failed to properly notify Plaintiff that it was foreclosing on the superpriority portion of its lien, that it further failed to identify or provide the super-priority amount in any of its notices, and even went as far as to refuse providing any payoff information regarding the alleged delinquent HOA account *See* attached as Exhibit "A", Plaintiff's proposed Amended Complaint. Moreover, the Court stated that lenders should have a right to pay off an HOA delinquent assessment lien to protect its interest. *Id.* at 414 ("U.S. Bank could have paid off the [HOA] lien to avert loss of its security.").

As discussed earlier, in evaluating a request for leave to amend, courts examine such factors as undue delay, bad faith, or dilatory motive and whether they are present. Those factors or reasons are simply not present here. Plaintiff's request to amend the pleadings is timely as only limited discovery has been commenced, settlement negotiations have or will soon be commencing between Plaintiff and SFR, and Plaintiff did not unreasonably delay in bringing this motion as it was first seeking to complete the NRS Ch. 38 mediation. Furthermore, this request is not made in bad faith or for any dilatory motive. To the contrary, Plaintiff is seeking leave to amend to ensure that this case may be evaluated on its merits in light of a recent change in circumstances and in the law. *See* 3 MOORE'S FEDERAL PRACTICE - CIVIL § 15.14 (discussing F.R.C.P. 15(a) and noting that "a court should allow amendments to ensure that all the issues are before the court").

In addition, the clear benefits of streamlining adjudication of common facts and related issues weigh heavily in favor of permitting amendment, as joining all of the relevant parties and adjudicating all claims in one action will benefit judicial economy, save the parties time and resources, and enable a thorough and conclusive determination of the parties' contentions.

Plaintiff also requests that the Court amend the caption to reflect the change in parties as shown in Plaintiff's proposed Amended Complaint, attached hereto as Exhibit "A".

///
///
///
///
///
///
///
///
///
///
///

III. **CONCLUSION**

For these reasons, Plaintiff respectfully requests leave to amend its Complaint in this matter, and for an Order of the Court amending the caption to reflect the change in parties.

Dated: September 12, 2016.

WRIGHT, FINLAY & ZAK, LLP

IT IS SO ORDERED:

_____
RICHARD F. BOULWARE, II
United States District Judge
DATED this 4th day of May, 2017.

*/s/ Rock K. Jung, Esq.*_____
Rock K. Jung, Esq.
Nevada Bar No. 10906
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
*Attorneys for Plaintiff/Counter-Defendant, Wilmington Trust Company, as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2007-1; and Cross-Defendants, Nationstar Mortgage, LLC and Mortgage Electronic Registration Systems, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP and that service of the foregoing **PLAINTIFF'S MOTION TO AMEND COMPLAINT AND CAPTION** was made on this 12th day of September, 2016, to all parties and counsel as identified on the CM/ECF System via Electronic Notification, and/or by depositing a true and correct copy in the United States Mail, addressed as follows:

*/s/ Allison Zeason*_____
An Employee of WRIGHT, FINLAY & ZAK, LLP

**EXHIBIT LIST**

1. Proposed Amended Complaint                                    Exhibit A

# EXHIBIT A

Proposed First Amended Complaint

# EXHIBIT A

# EXHIBIT A

WRIGHT, FINLAY & ZAK, LLP
Edgar C. Smith, Esq.
Nevada Bar No. 5506
Rock K. Jung, Esq.
Nevada Bar No. 10906
7785 W. Sahara Ave., Suite 200
Las Vegas, NV, 89117
(702) 475-7964; Fax: (702) 946-1345
rjung@wrightlegal.net
*Attorneys for Plaintiff/Counter-Defendant, Wilmington Trust Company, as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2007-1; and Cross-Defendants, Nationstar Mortgage, LLC and Mortgage Electronic Registration Systems, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| WILMINGTON TRUST COMPANY, AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-1,<br><br>       Plaintiff,<br><br>   vs.<br><br>SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company; CLUB AT MADEIRA CANYON UNIT OWNERS' ASSOCIATION; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>       Defendants. | Case No.: 2:16-cv-00326-RFB-PAL<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited liability company,<br><br>      Counter/Cross-Claimant,<br><br>   vs.<br><br>WILMINGTON TRUST COMPANY, AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-1; NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; | |

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a
Delaware corporation, as nominee beneficiary
for PULTE MORTGAGE, LLC; HAMLET
McNEACE, an individual; and SHAWN
McNEACE, an individual,

Counter/Cross-Defendants.

COMES NOW Plaintiff/Counter-defendant, Wilmington Trust Company, as Trustee for the Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2007-1 (hereinafter "Plaintiff"), by and through their attorneys of record, Edgar C. Smith, Esq. and Rock K. Jung, Esq., of the law firm of WRIGHT, FINLAY & ZAK, LLP, and hereby submits its First Amended Complaint.

## INTRODUCTION

1.      The real property that is the subject of this civil action consists of a residence commonly known as 2745 King Louis Street, Henderson, Nevada 89044 (Parcel No.190-19-810-122) (hereinafter the "Property").

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as Plaintiff is a "citizen of a different States" from all defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because Defendants reside in this district; a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district; and the property that is the subject of this action is situated in this district, in North Las Vegas, Clark County, Nevada.

4.      The Court has personal jurisdiction over SFR INVESTMENTS POOL I, LLC (hereinafter "Buyer" or "SFR") because this lawsuit arises out of and is connected with its purposeful purchase of an interest in real property situated in the County of Clark, State of Nevada, and upon information and belief, SFR is a Nevada limited liability company.

5. The Court has personal jurisdiction over MADEIRA CANYON UNIT OWNERS' ASSOCIATION (hereinafter "HOA") because this lawsuit arises out of and is connected with the HOA's foreclosure of real property located in the County of Clark, State of Nevada, and upon information and belief, the HOA is a Nevada non-profit corporation.

6. The Court has personal jurisdiction over NEVADA ASSOCIATION SERVICES, INC. (hereinafter "HOA Trustee" or "NAS") because this lawsuit arises out of and is connected with the NAS's acts or omissions in relation to the foreclosure of real property located in the County of Clark, State of Nevada, and upon information and belief, NAS is a Nevada domestic corporation.

## PARTIES

7. Plaintiff is a Delaware corporation and authorized to do business in the State of Nevada.

8. Plaintiff is now and at all times relevant herein the assigned Beneficiary under the Deed of Trust signed by Hamlet McNeace and Shawn L. McNeace (hereinafter "McNeace"), as husband and wife, recorded on November 1, 2006, (hereinafter "Deed of Trust"), which encumbers the Property and secures a promissory note.

9. Upon information and belief, SFR is a Nevada limited-liability company. Public records show SFR is the current owner of record for the Property.

10. Upon information and belief, the HOA, is a Nevada non-profit corporation licensed to do business in the state of Nevada.

11. Upon information and belief, the HOA Trustee, is a Nevada domestic corporation licensed to do business in the State of Nevada.

## GENERAL ALLEGATIONS

12. On or about October 31, 2006, McNeace purchased the Property.

13. To purchase the Property, McNeace borrowed $683,528.00 from originating lender Pulte Mortgage, LLC. To obtain the loan, McNeace executed a Note secured by a Deed of Trust recorded on November 1, 2006. The Deed of Trust identified Pulte Mortgage, LLC, as the Lender; Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Plaintiff's

successors and assigns, and Lawyers Title as the Trustee.[1]

     14.     On May 5, 2014, a Corporate Assignment of Deed of Trust was recorded against the Property conveying the beneficial interest under the Deed of Trust to Nationstar Mortgage, LLC.[2]

     15.     On June 24, 2014, an Assignment of Deed of Trust was recorded against the Property conveying the beneficial interest under the Deed of Trust to Plaintiff.[3]

     16.     On August 21, 2012, a Notice of Delinquent Assessment Lien was recorded against the Property by the HOA Trustee on behalf of the HOA.[4]

     17.     On October 31, 2012, a Notice of Default and Election to Sell was recorded against the Property.[5]

     18.     On October 4, 2013, the HOA Trustee recorded a Notice of Foreclosure Sale with the Clark County Recorder on behalf of the HOA.[6]

     19.     Upon information and belief, a non-judicial foreclosure sale is alleged to have occurred on March 28, 2014 (the "HOA Sale"), whereby the HOA conveyed its interest in the Property, if any, to Buyer for the sum of $17,000.00.

     20.     Public records show that on March 31, 2014, a Foreclosure Deed was recorded by

---

[1]     A true and correct copy of the Deed of Trust recorded as Book and Instrument Number 20061101-0004451 with the Clark County Recorder on March 9, 2009, is attached hereto as **Exhibit 1**.

[2]     A true and correct copy of the Corporation Assignment of Deed of Trust recorded as Book and Instrument Number 20090924-0002868 with the Clark County Recorder on September 24, 2009, is attached hereto as **Exhibit 2**.

[3]     A true and correct copy of the Assignment of Deed of Trust recorded as Book and Instrument Number 20140624-0000200 with the Clark County Recorder is attached hereto as **Exhibit 3**.

[4]     A true and correct copy of the Notice of Delinquent Assessment Lien recorded as Book and Instrument Number 20120821-0002043 is attached hereto as Exhibit **4**.

[5]     A true and correct copy of the Notice of Default and Election to Sell Under Homeowners Association Lien recorded as Book and Instrument Number 20121031-0001396 with the Clark County Recorder is attached hereto as **Exhibit 5**.

[6]     A true and correct copy of the Notice of Foreclosure Sale recorded with the Clark County Recorder as Book and Instrument Number 20131004-0001613, is attached hereto as **Exhibit 6**.

which Buyer claims its interest.[7]

21. None of the aforementioned notices identified above and attached as Exhibits 4-6 identified what portion of the claimed lien was for alleged late fees, interest, fines/violations, or collection fees/costs.

22. None of the aforementioned notices identified above and attached as Exhibits 4-6 specified what portion of the lien, if any, that the HOA claimed constituted a "super-priority" lien.

23. None of the aforementioned notices identified above and attached as Exhibits 4-6 specified whether the HOA was foreclosing on the "super-priority" portion of its lien, if any, or under the non-super-priority portion of the lien.

24. None of the aforementioned notices identified above and attached as Exhibits 4-6 provided any notice of a right to cure.

25. A homeowner's association sale conducted pursuant to NRS Chapter 116 must comply with all notice provisions as stated in NRS 116.31162 through NRS 116.31168 and NRS 107.090.

26. A lender or a holder of a beneficial interest in a senior deed of trust, such as Plaintiff, has a right to cure a delinquent homeowner's association lien in order to protect its interest.

27. Upon information and belief, the HOA and its agent, the HOA Trustee, did not comply with all mailing and noticing requirements stated in NRS 116.31162 through NRS 116.31168, or as required by the CC&R's.

28. A recorded notice of default must "describe the deficiency in payment."

29. The HOA Sale occurred without notice to Plaintiff, what portion of the lien, if any, that HOA and HOA Trustee claimed constituted a "super-priority" lien.

30. The HOA Sale occurred without notice to Plaintiff, whether HOA was foreclosing on the "super-priority" portion of its lien, if any, or under the non-super-priority portion of the

---

[7] A true and correct copy of the Foreclosure Deed recorded with the Clark County Recorder as Book and Instrument Number 20140331-0002267, is attached hereto as **Exhibit 7**.

lien.

31.     The HOA Sale occurred without notice to Plaintiff, of a right to cure the delinquent assessment and the super-priority lien, if any.

32.     The HOA Sale violated Plaintiff's rights to due process because Plaintiff was not given proper, adequate notice and the opportunity to cure the deficiency or default in the payment of the HOA's assessments and the super-priority lien, if any.

33.     The HOA Sale was an invalid sale and could not have extinguished Plaintiff's secured interest because of defects in the notices given to Plaintiff, or its predecessors, agents, servicers or trustees, if any.

34.     Under NRS Chapter 116, a lien under NRS 116.3116(1) can only include costs and fees that are specifically enumerated in the statute.

35.     A homeowner's association may only collect as a part of the super priority lien (a) nuisance abatement charges incurred by the association pursuant to NRS 116.310312 and (b) nine months of common assessments which became due prior to the institution of an action to enforce the lien (unless Fannie Mae and Freddie Mac regulations require a shorter period of not less than six months).

36.     Upon information and belief, the HOA Foreclosure Notices included improper fees and costs in the amount demanded.

37.     The attorney's fees and the costs of collecting on a homeowner's association lien cannot be included in the super-priority lien.

38.     Upon information and belief, the HOA assessment lien and foreclosure notices included fines, interest, late fees, dues, attorney's fees, and costs of collection that are not properly included in a super-priority lien under Nevada law and that are not permissible under NRS 116.3102 et seq.

39.     The HOA Sale did not comply with NRS 116.3102 et seq. because none of the aforementioned notices, identified above, identified what portion of the claimed lien were for alleged late fees, interest, fines/violations, or collection fees/costs.

40.     The HOA Sale is unlawful and void under NRS 116.3102 et seq.

41. The HOA Sale is unlawful and void because the "opt-in" provision in NRS 116.3116 does not satisfy Constitutional Due Process safeguards under the 5th and 14th Amendment to the United States Constitution, nor Article 1, Section 8, of the Nevada Constitution, so that the statute is unconstitutional on its face.

42. Alternatively, the HOA Sale is unlawful and void because the statutory scheme set forth in NRS 116.3116, et seq. constitutes a regulatory taking of private property without adequate compensation so the statute is unconstitutional on its face.

43. NRS 116.31162 through NRS 116.31168 do not contain any provision requiring notice of a foreclosure to the Plaintiff, beneficiary or holder of a first mortgage or deed of trust, thus violating their constitutional right to due process.

44. Alternatively, NRS Chapter 116 is unconstitutional on its face as it lacks any express right by the Plaintiff, beneficiary or holder, or their respective trustees, servicers, agents, or representatives, to obtain payoff information for the super-priority portion, if any, of the homeowner's association lien or the express right to cure the default and protect the Deed of Trust, and it lacks an express obligation for a homeowner's association or its agents to accept a tendered payoff and release the super-priority portion of the lien.

45. Alternatively, NRS Chapter 116 is unconstitutional on its face due to vagueness and ambiguity.

46. The HOA Sale deprived Plaintiff of its right to due process because the foreclosure notices failed to identify the super-priority amount, or to adequately describe the deficiency in payment, to provide Plaintiff notice of the correct super-priority amount, or to provide a reasonable opportunity for Plaintiff to protect its priority by payment to satisfy that amount.

47. Either the HOA Sale, which violated Plaintiff's constitutional rights was ineffective to displace Plaintiff's first position under its Deed of Trust such that Buyer took its interest subject to that Deed of Trust, or the HOA Sale was invalid and must be set aside.

48. A homeowner's association sale must be done in a commercially reasonable manner.

49. The HOA Sale was not commercially reasonable, and the HOA Sale not done in good faith, in light of the sales price when compared to the debt owed to Plaintiff on the McNeace Loan ($683,342.88) and the fair market value of the property, along with the errors alleged above.

50. Upon information and belief, at the time of the HOA Sale, the fair market value of the Property exceeded $473,166.00.

51. The amount paid at the HOA Sale allegedly totaled $17,000.00.

52. The circumstances of the HOA Sale of the Property breached the HOA's obligations of good faith under NRS 116.1113 and its duty to act in a commercially reasonable manner.

53. The HOA Sale by which Buyer, eventually, took its interest was commercially unreasonable if it extinguished Plaintiff's Deed of Trust.

54. In the alternative, the HOA Sale was an invalid sale and could not have extinguished Plaintiff's secured interest because it was not a commercially reasonable sale.

55. Without providing Plaintiff notice of the correct super-priority amount and a reasonable opportunity to tender payment to satisfy that amount, including the failure to set out the super-priority amount and the failure to adequately describe the deficiency in payment as required by Nevada law, the HOA Sale is commercially unreasonable and deprived Plaintiff of its right to due process.

56. Because the CC&Rs contained a Mortgagee Protection Clause and because Plaintiff was not given proper notice that the HOA intended to foreclose on the super-priority portion of the dues owing, Plaintiff did not know that it had to attend the HOA Sale to protect its security interest.

57. Because the CC&Rs contained a Mortgagee Protection Clause, and because proper notice that the HOA intended to foreclose on the super-priority portion of the dues owing was not given, prospective bidders did not appear for the HOA Sale, making the HOA Sale commercially unreasonable.

58. The circumstances of the HOA Sale of the Property breached the HOA's and the

HOA Trustee's obligations of good faith under NRS 116.1113 and their duty to act in a commercially reasonable manner.

59. Plaintiff is informed and believes that SFR was a professional foreclosure sale property purchaser.

60. The circumstances of the HOA Sale of the Property and their status as a professional property purchaser mean SFR cannot be deemed a bona fide purchaser for value.

61. Upon information and belief, SFR had actual, constructive or inquiry notice of Plaintiff's first Deed of Trust, which prevents SFR from being deemed a bona fide purchaser or encumbrancer for value.

62. In the event Plaintiff's interest in the Property is not reaffirmed nor restored, Plaintiff suffered damages in the amount of the fair market value of the Property or the unpaid balance of the Manzo Loan and Deed of Trust, at the time of the HOA Sale, whichever is greater, as a proximate result of Defendant's acts and omissions.

## FIRST CAUSE OF ACTION

### (Quiet Title/Declaratory Relief versus SFR, HOA, and HOA Trustee)

63. Plaintiff incorporates and re-alleges all previous paragraphs, as if fully set forth herein.

64. Pursuant to NRS 30.010 et seq. and NRS 40.010, this Court has the power and authority to declare Plaintiff's rights and interests in the Property and to resolve Defendants' adverse claims in the Property.

65. Further, pursuant to NRS 30.010 et seq., this Court has the power and authority to declare the rights and interest of the parties following the acts and omissions of the HOA and HOA Trustee in foreclosing the Property.

66. Plaintiff's Deed of Trust is a first secured interest on the Property as intended by NRS 116.3116(2)(b).

67. As the current beneficiary under the Deed of Trust and the Plaintiff entitled to enforce the Loan, Plaintiff's interest still encumbers the Property and retains its first position status in the chain of title for the Property after the HOA Sale and is superior to the interest, if

any, acquired by Defendant, or held or claimed by any other successor in interest to any of them, for the reasons alleged herein.

68. Upon information and belief, Defendant SFR dispute Plaintiff's claims and assert priority, so that their claims are adverse to Plaintiff's claims.

69. Upon information and belief, the HOA, the HOA Trustee and the fictitious Defendants failed to provide proper, adequate and sufficient notices required by Nevada statutes, the CC&R's and assure due process to Plaintiff, and therefore the HOA Sale is void and should be set aside or rescinded.

70. Based on the adverse claims being asserted by the parties, Plaintiff is entitled to a judicial determination regarding the rights and interests of the respective parties to the case.

71. For all the reasons set forth, Plaintiff is entitled to a determination from this Court, pursuant to NRS 40.010, that Plaintiff is the beneficiary of a Deed of Trust that still encumbers the Property as of the date of the court's determination, and that Plaintiff's rights under the deed of trust are superior in the chain of title to the interest of all Defendants.

72. In the alternative, if it is found under state law that Plaintiff's interest could have been extinguished by the HOA sale, for all the reasons set forth above and in the Factual Background, Plaintiff is entitled to a determination from this Court, pursuant to NRS 30.010 and NRS 40.010, that the HOA Sale is unlawful and void and conveyed no legitimate interest to Defendant.

73. Plaintiff has furthermore been required to retain counsel and is entitled to recover reasonable attorney's fees for having brought the underlying action.

## SECOND CAUSE OF ACTION

### (Preliminary and Permanent Injunctions versus SFR)

74. Plaintiff incorporates by reference the allegations of all previous paragraphs, as if fully set forth herein.

75. As set forth above, Defendant may claim an ownership interest in the Property that is adverse to Plaintiff.

76. Any sale or transfer of the Property, prior to a judicial determination concerning

the respective rights and interests of the parties to the case, may be rendered invalid if Plaintiff's Deed of Trust still encumbered the Property in first position and was not extinguished by the HOA Sale.

77.     Plaintiff has a reasonable probability of success on the merits of the Complaint, for which compensatory damages will not compensate Plaintiff for the irreparable harm of the loss of title to a bona fide purchaser or loss of the first position priority status secured by the Property.

78.     Plaintiff has no adequate remedy at law due to the uniqueness of the Property involved in the case.

79.     Plaintiff is entitled to a preliminary and permanent injunction prohibiting Defendant, their successors, assigns, and agents from conducting a sale, transfer or encumbrance of the Property if Defendant or its transferee claims or will claim the sale, transfer or encumbrance to be made free and clear of Plaintiff's Deed of Trust.

80.     Plaintiff is entitled to a preliminary injunction requiring Defendant to pay all taxes, insurance and homeowner's association dues during the pendency of this action.

81.     Plaintiff is entitled to a preliminary injunction requiring Defendant to segregate and deposit all rents with the Court or a Court-approved trust account over which Defendant has no control during the pendency of this action.

82.     Plaintiff is entitled to a mandatory injunction that the HOA and HOA Trustee be compelled to deliver to the Clerk of the Court and deposit all funds collected at the HOA Sale pending determination by the Court of the validity of the sale and the respective rights of the parties to the sale proceeds.

83.     Plaintiff has been required to retain counsel to prosecute this action and is entitled to recover reasonable attorney's fees to prosecute this action.

### THIRD CAUSE OF ACTION

**(Unjust Enrichment versus Defendants)**

84.     Plaintiff incorporates and re-alleges all previous paragraphs, as if fully set forth herein.

85. Plaintiff has been deprived of the benefit of its secured deed of trust by the actions of Defendant.

86. Defendants have benefitted from the unlawful HOA Sale and nature of the real property.

87. SFR has benefitted from Plaintiff's payment of taxes, insurance or homeowner's association assessments since the time of the HOA Sale.

88. Should Plaintiff's Complaint be successful in quieting title against Defendants, Defendants will have been unjustly enriched by the difference in amount between the price paid at the HOA Sale and the fair value of the Property, together with interest thereon.

89. Plaintiff will have suffered damages if SFR or the HOA or HOA Trustee are allowed to retain its interests in the Property and the funds received from the HOA Sale.

90. Plaintiff will have suffered damages if SFR is allowed to retain its interests in the Property and Plaintiff's payment of taxes, insurance or homeowner's association assessments since the time of the HOA Sale.

91. Plaintiff is entitled to general and special damages in excess of $10,000.00.

92. Plaintiff has furthermore been required to retain counsel and is entitled to recover reasonable attorney's fees for having brought the underlying action.

**FOURTH CAUSE OF ACTION**

**(Wrongful Foreclosure versus the HOA and the HOA Trustee)**

93. Plaintiff incorporates by reference the allegations of all previous paragraphs, as if fully set forth herein.

94. Upon information and belief, no payoff information, including the amount of the alleged super-priority amount, was provided to Plaintiff or to its predecessors-in-interest, prior to the HOA Sale.

95. The HOA and HOA Trustee improperly proceeded with the HOA Sale.

96. The HOA foreclosure sale was wrongfully conducted and completed, and therefore, the Court should set aside the HOA Sale to the extent that it purports to have

extinguished Plaintiff's first Deed of Trust and delivered free and clear title of the Property to SFR.

97.     The HOA Sale was not done in accordance with the Nevada statutes, and as such, the HOA Sale was wrongfully conducted and should be set aside.

98.     The HOA assessment lien and foreclosure notices included improper fees and costs in the amount demanded, and thus, the HOA Sale was wrongfully conducted and should be set aside.

99.     As a direct and proximate result of the HOA and HOA Trustee's wrongful foreclosure of the Property by the HOA Sale, Plaintiff suffered general and special damages.

100.    Plaintiff has been required to retain counsel to prosecute this action and is entitled to recover reasonable attorney's fees to prosecute this action.

### **FIFTH CAUSE OF ACTION**

### **(Negligence versus the HOA and HOA Trustee)**

101.    Plaintiff incorporates by reference the allegations of all previous paragraphs, as if fully set forth herein.

102.    The HOA and HOA Trustee owed a duty to Plaintiff and other lienholders to allow Plaintiff or its predecessors-in-interest and their respective agents, servicers or trustees, if any, an opportunity to protect their interest and cure the super-priority lien threatening their security interests.

103.    The HOA and HOA Trustee breached their duty by rejecting the tendered super-priority lien amount and naming the incorrect HOA in their notices but yet still proceeding with the HOA Sale on the super-priority lien.

104.    As a direct and proximate result of the HOA and HOA Trustee's breaches of their duties, Plaintiff's security interest has been threatened.

105.    As a direct and proximate result of the HOA and HOA Trustee's breaches of their duties, Plaintiff has incurred general and special damages.

106.    If Plaintiff is found to have lost its first security interest in the Property, it was the direct and proximate result of the HOA and HOA Trustee's breaches of their duties, and

Plaintiff has thereby suffered general and special damages.

107.     Plaintiff has been required to retain counsel to prosecute this action and is entitled to recover reasonable attorney's fees to prosecute this action.

## SIXTH CAUSE OF ACTION

### (Negligence Per Se versus the HOA and HOA Trustee)

108.     Plaintiff incorporates by reference the allegations of all previous paragraphs, as if fully set forth herein.

109.     The HOA and HOA Trustee breached the statutory duties by rejecting the tendered super-priority lien amount and naming the incorrect HOA in the notices but yet still proceeding with the HOA Sale, which SFR claims extinguished Plaintiff's security interest.

110.     Plaintiff is a member of the class of person whom NRS Chapter 116 is intended to protect.

111.     The injury that Plaintiff faces – extinguishment of its first position Deed of Trust – is the type against which NRS Chapter 116 is intended to protect.

112.     As a direct and proximate result of the HOA and HOA Trustee's breaches of their statutory duties, Plaintiff's security interest is threatened.

113.     As a direct and proximate result of the HOA and HOA Trustee's breaches of their duties, Plaintiff has incurred general and special damages.

114.     If Plaintiff is found to have lost its first secured interest in the Property, it was the direct and proximate result of the HOA and HOA Trustee's breaches of their statutory duties, and Plaintiff has thereby suffered general and special damages.

115.     Plaintiff has been required to retain counsel to prosecute this action and is entitled to recover reasonable attorney's fees to prosecute this action.

## PRAYER

Wherefore, Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

1.     For a declaration and determination that Plaintiff's interest is secured against the Property, and that Plaintiff's first Deed of Trust was not extinguished by the HOA Sale as

Plaintiff's predecessor-in-interest paid the super-priority portion of the HOA lien;

2. For a declaration and determination that Plaintiff's interest is superior to the interest of SFR, and any and all successors;

3. For a declaration and determination that the HOA Sale was invalid to the extent it purports to convey the Property free and clear to SFR;

4. In the alternative, for a declaration and determination that the HOA Sale was invalid and conveyed no legitimate interest to SFR;

5. For a preliminary injunction that SFR, and its successors, assigns, and agents are prohibited from conducting a sale or transfer of the Property and representing the sale is free and clear of the Deed of Trust;

6. For a preliminary injunction that SFR, and its successors, assigns, and agents pay all taxes, insurance and homeowner's association dues during the pendency of this action;

7. For a preliminary injunction that SFR, and its successors, assigns, and agents be required to segregate and deposit all rents with the Court or a Court-approved trust account over which SFR has no control during the pendency of this action;

8. If it is determined that Plaintiff's Deed of Trust has been extinguished by the HOA Sale, for special damages in the amount of the fair market value of the Property or the unpaid balance of the Manzo Loan and Deed of Trust, at the time of the HOA Sale, whichever is greater;

9. For general and special damages;

10. In the alternative, for restitution;

11. For attorney's fees;

///
///
///
///
///
///

12. For costs of incurred herein, including post-judgment costs; and

13. For any and all further relief deemed appropriate by this Court.

Dated: September 12, 2016.

WRIGHT, FINLAY & ZAK, LLP


*/s/ Rock K. Jung, Esq.*
Rock K. Jung, Esq.
Nevada Bar No. 10906
7785 W. Sahara Ave., Suite 200
Las Vegas, NV 89117
*Attorneys for Plaintiff/Counter-Defendant,*
*Wilmington Trust Company, as Trustee for the Bear*
*Stearns ALT-A Trust, Mortgage Pass-Through*
*Certificates, Series 2007-1; and Cross-Defendants,*
*Nationstar Mortgage, LLC and Mortgage*
*Electronic Registration Systems, Inc.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP and that service of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT** was made on this 12th day of September, 2016, to all parties and counsel as identified on the CM/ECF System via Electronic Notification, and/or by depositing a true and correct copy in the United States Mail, addressed as follows:


*/s/ Allison Zeason*
An Employee of WRIGHT, FINLAY & ZAK, LLP

## **EXHIBIT LIST**

1.  Deed of Trust, Doc. No. 20061101-0004451                                     Exhibit 1
2.  Corporation Assignment of Deed of Trust, Doc. No. 20090924-0002868   Exhibit 2
3.  Assignment Deed of Trust, Doc. No. 20140624-0000200                    Exhibit 3
4.  Notice of Delinquent Assessment Lien, Doc. No. 20120821-0002043    Exhibit 4
5.  Notice of Default and Election to Sell, Doc. No. 20121031-0001396   Exhibit 5
6.  Notice of Foreclosure Sale, Doc. No. 20131004-0001613               Exhibit 6
7.  Foreclosure Deed, Doc. No. 20140331-0002267                         Exhibit 7

# Exhibit 1

Deed of Trust, Doc. No. 20061101-0004451

# Exhibit 1

# Exhibit 1

20061101-0004451

Fee: $35.00
N/C Fee: $0.00

11/01/2006                    14:25:15
T20060193786

**Requestor:**
    LAWYERS TITLE OF NEVADA

**Charles Harvey**                    SOL
**Clark County Recorder**    Pgs: 22

Assessor's Parcel Number:
190-19-810-122
Return To: Pulte Mortgage, LLC

7475 S. Joliet St.
Englewood, CO 80112
**Attn: Sales & Acquisitions**

Prepared By: Pulte Mortgage, LLC

7475 South Joliet Street Englewood,
Co 80112

~~Recording Requested By:~~ Pulte Mortgage, LLC

7475 South Joliet Street
Englewood, Co 80112

*Escrow# 01904849 BA*



———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST    MIN 100057400002700930
**VRU# 1-888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated October 24, 2006 together with all Riders to this document.

**(B) "Borrower"** is Hamlet McNeace and Shawn L McNeace Husband and Wife

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Pulte Mortgage LLC

**NEVADA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3029 1/01**
**WITH MERS**

-6A(NV) (0510)

Page 1 of 15            Initials:            MNV41AFORM77-01438    (Rev. 05/06)

VMP Mortgage Solutions, Inc.

Lender is a Limited Liability Company
organized and existing under the laws of Delaware
Lender's address is 7475 South Joliet Street  Englewood, CO 80112

**(D) "Trustee"** is Lawyers Title

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated October 24, 2006                    .
The Note states that Borrower owes Lender Six Hundred Eighty-three Thousand Five Hundred Twenty-eight And 00/100                                            Dollars
(U.S. $683,528.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2036                    .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

MNV41BFORM77-01438
(VMP)®-6A(NV) (0510)                    Page 2 of 15                    Initials: ___                    Form 3029  1/01

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                   [Type of Recording Jurisdiction]
of Clark                            [Name of Recording Jurisdiction]:

```
All that certain real property situated in the County of Clark, State of
Nevada, described as follows: PARCEL ONE (1): Lot Two Hundred Sixteen
(216) in Block Seven (7) of PROVENCE COUNTRY CLUB PARCEL 1 as shown by
map thereof on file in Book 121 of Plats, Page 93 in the Office of the
County Recorder of Clark County, Nevada. PARCEL TWO (2): A non-exclusive
easement for utilities, ingress, egress and of enjoyment in, to and over
the Common Elements as set forth in the Declaration of Covenants,
Conditions and Restrictions for CLUB AT MADEIRA CANYON recorded May 24,
2005 in Book 20050524 as Document No. 02413 of Official Records. Official
Records.
```

Parcel ID Number: 190-19-810-122                which currently has the address of
2745 King Louis St                                     [Street]
Henderson                 [City], Nevada 89044         [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

**MNV41CFORM77-01438**

VMP®-6A(NV) (0510)                Page 3 of 15            Initials: _____         Form 3029  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives

Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

**MNV41GFORM77-01438**

-6A(NV) (0510)                              Page 7 of 15                     Initials:_____     **Form 3029  1/01**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

MNV41HFORM77-01438

-6A(NV) (0510)                    Page 8 of 15                    Initials: [initials]                    Form 3029  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MNV41IFORM77-01438

Initials: _____

VMP®-6A(NV) (0510)                          Page 9 of 15                          Form 3029  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**MNV41JFORM77-01438**

-6A(NV) (0510)                          Page 10 of 15                    Initials: ___                    Form 3029   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

**MNV41KFORM77-01438**

⊕-6A(NV) (0510)                    Page 11 of 15                    Initials: _[handwritten]_                    Form 3029  1/01

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MNV41LFORM77-01438                    Initials: _____

®-6A(NV) (0510)               Page 12 of 15               **Form 3029  1/01**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ currency which does not exceed the amount set by HUD.

MNV41MFORM77-01438

Initials: _M G_

VMP®-6A(NV) (0510)            Page 13 of 15            Form 3029 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           Hamlet McNeace            -Borrower


_____          _____ (Seal)
                                           Shawn L McNeace           -Borrower


_____ (Seal)            _____ (Seal)
               -Borrower                                  -Borrower


_____ (Seal)            _____ (Seal)
               -Borrower                                  -Borrower


_____ (Seal)            _____ (Seal)
               -Borrower                                  -Borrower


**MNV41NFORM77-01438**
VMP®-6A(NV) (0510)                Page 14 of 15                **Form 3029   1/01**

**STATE OF NEVADA**
**COUNTY OF** Clark

This instrument was acknowledged before me on *October 31, 2006*                    by
Hamlet McNeace and Shawn L McNeace

> CORTNEY WADE
> Notary Public State of Nevada
> No. 02-78991-1
> My appt. exp. Nov. 26, 2006



Mail Tax Statements To:
Hamlet McNeace
2745 King Louis St, Henderson, NV  89044

> CORTNEY WADE
> Notary Public State of Nevada
> No. 02-78991-1
> My appt. exp. Nov. 26, 2006

MNV41OFORM77-01438
-6A(NV) (0510)                    Page 15 of 15        Initials:                    Form 3029  1/01

# PLANNED UNIT DEVELOPMENT RIDER
### VRU# 1-888-679-6377    MIN# 10005740002700930

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24th                    day of
October, 2006                                                    , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to Pulte Mortgage LLC

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 2745 King Louis St, Henderson, NV  89044

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
Declarations of Covenants, Conditions, and Restrictions of record

(the "Declaration"). The Property is a part of a planned unit development known as
Provence Country Club

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

**PUD1FORM77-01438    (Rev. 08/06)**

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01**
Wolters Kluwer Financial Services              Page 1 of 3                    Initials:
VMP®-7R (0411).01

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**PUD2FORM77-01438**

VMP®-7R (0411).01          Page 2 of 3        Initials:          Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Hamlet McNeace          -Borrower        Shawn L McNeace          -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

PUD3FORM77-01438
VMP®-7R (0411).01                    Page 3 of 3                    Form 3150 1/01

After Recording Return To: **Pulte Mortgage LLC**
**7475 South Joliet Street**
**Englewood, CO 80112**
**Attn: Sales & Acquisitions**

Prepared By: **Pulte Mortgage LLC**

DOC/Parcel ID#: **190-19-810-122**

———————————— (Space Above This Line For Recording Data) ————————————

# FIXED/ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made **October 24, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **Pulte Mortgage LLC** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**2745 King Louis St**
**Henderson, NV 89044**

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

Conv
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
FE-4266 (0603)
P-29ARA   (05/06)                               Page 1 of 4

Initials:

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of   6.500   %.  The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)   Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **November, 2011** , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two And One-quarter** percentage points ( **2.250** %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.500** % or less than **2.250** %.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months.  My interest rate will never be greater than **11.500** % or less than **2.250** %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Conv
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
FE-4266 (0603)

P-29ARB                              Page 2 of 4                     Initials: _____

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1.  UNTIL BORROWER'S INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date of notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2.  WHEN BORROWER'S INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Copy

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
FE-4266 (0603)
P-29ARC                              Page 3 of 4                        Initials: _____

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.**

I understand that for the Interest Only Period my monthly payments will not reduce the Principal balance on my loan. My monthly payments after the Interest Only Period will consist of both Principal and interest and will be higher unless I have made additional payments to reduce the Principal balance.

_____ (Seal)        _____ (Seal)
**Hamlet McNeace**           - Borrower          **Shawn L McNeace**           - Borrower

_____ (Seal)        _____ (Seal)
                             - Borrower                                        - Borrower

_____ (Seal)        _____ (Seal)
                             - Borrower                                        - Borrower

_____ (Seal)        _____ (Seal)
                             - Borrower                                        - Borrower

Conv
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY
**FE-4266 (0603)**
P-29ARD                                         Page 4 of 4

# **Exhibit 2**

Corporation Assignment of DOT, Doc. No.
20090924-0002868

# **Exhibit 2**

# **Exhibit 2**

Inst#:200909240002868 Fees:$14.00 N/C Fee:$25.00 09/24/2009 12:23:58 PM
Receipt#:69530 Requestor:TITLE COURT SERVICE INC Recorded By:BGN Pgs:1 DEBBIE
CONWAY CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
**AND WHEN RECORDED MAIL DOCUMENT TO:**
BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

TS No. 09-0127823
**TITLE ORDER#: 4240641**
APN# 190·19·810·120

**CORPORATION ASSIGNMENT OF DEED OF TRUST NEVADA**

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:
**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 10/24/2006,
EXECUTED BY: HAMLET MCNEACE AND SHAWN L MCNEACE HUSBAND AND
WIFE,TRUSTOR: TO LAWYERS TITLE, TRUSTEE AND RECORDED AS INSTRUMENT NO.
0004451 ON 11/01/2006, IN BOOK 20061101, OF OFFICIAL RECORDS IN THE COUNTY
RECORDER'S OFFICE OF CLARK COUNTY, IN THE STATE OF NEVADA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: September 09, 2009          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
                                   INC.

State of: **Texas**                )
County of: **Dallas**              )BY: _Angela Nava_

                                   **Angela Nava** , Assistant Secretary

On _9-12-09_ before me _ANGELA SERATO_____, personally appeared _**Angela Nava**_
**Assistant Secretary**, know to me (or proved to me on the oath of _____ or through
_____) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

ANGELA SERATO
My Commission Expires
July 27, 2013

# Exhibit 3

Assignment of Deed of Trust, Doc. No. 20140624-0000200

# Exhibit 3

# Exhibit 3

Inst #: 20140624-0000200
Fees: $18.00
N/C Fee: $0.00
06/24/2014 08:31:40 AM
Receipt #: 2066333
Requestor:
CORELOGIC
Recorded By: MAT   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

Recording Requested By:
**Bank of America, N.A.**
Prepared By: **Ralph Flores**
**800-444-4302**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#    **11313195169291168**
Tax ID:     **190-19-810-122**
Property Address:
**2745 King Louis St**
**Henderson, NV 89044-0309**
NV0-ADT  26998834    6/12/2014  NSBO830

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **WILMINGTON TRUST NATIONAL ASSOCIATION, SUCCESSOR TRUSTEE TO CITIBANK, N.A., AS TRUSTEE FOR THE BEAR STEARNS ALT-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1** whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary:          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PULTE MORTGAGE LLC, ITS SUCCESSORS AND ASSIGNS**
Made By:             **HAMLET MCNEACE AND SHAWN L MCNEACE HUSBAND AND WIFE**
Trustee:              **LAWYERS TITLE**
Date of Deed of Trust: **10/24/2006**      Original Loan Amount: **$683,528.00**

Recorded in **Clark County, NV** on: **11/1/2006**, book **N/A**, page **N/A** and instrument number **20061101-0004451**

I the undersigned hereby affirm that this document submitted for recording does not contain the social security number of any person or persons.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
~~JUN 1 3 2014~~

Bank of America, N.A., successor by merger to BAC
Home Loans Servicing, LP, fka Countrywide Home Loans
Servicing LP

By: _____
        Talisha Wallace
        **Assistant Vice President**

State of **California**
County of **Ventura**

On ___JUN 13 2014___ before me, _____**D. Nieblas**_____, Notary Public, personally appeared
_____**Talisha Wallace**_____, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: ___**D. Nieblas**___                    (Seal)
My Commission Expires: ___Exp. 2/14/2018___

D. NIEBLAS
COMM.# 2057846
NOTARY PUBLIC · CALIFORNIA
VENTURA COUNTY
My Comm. Expires Feb. 14, 2018

DocID#    **11313195169291168**

# Exhibit 4

Notice of Delinquent Assessment Lien, Doc. No.
20120821-0002043

# Exhibit 4

# Exhibit 4

Inst #: 201208210002043
Fees: $17.00
N/C Fee: $0.00
08/21/2012 09:42:50 AM
Receipt #: 1279105
Requestor:
NORTH AMERICAN TITLE COMPAN
Recorded By: RNS    Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN # 190-19-810-122
# N72035

## Accommodation

## NOTICE OF DELINQUENT ASSESSMENT LIEN

In accordance with Nevada Revised Statutes and the Association's declaration of Covenants Conditions and Restrictions (CC&Rs), recorded on May 24, 2005, as instrument number 0002413 BK 20050524, of the official records of Clark County, Nevada, the Club at Madeira Canyon, a planned community has a lien on the following legally described property.

The property against which the lien is imposed is commonly referred to as 2745 King Louis Street Henderson, NV 89044 particularly legally described as:  PROVENCE CNTRY CLUB PARCEL 1, PLAT BOOK 121, PAGE 93, LOT 216, BLOCK 7 in the County of Clark.

The owner(s) of record as reflected on the public record as of today's date is (are):
Hamlet McNeace, Shawn L McNeace

Mailing address(es):
2540 Purple Heather Place Henderson, NV 89052
2540 Purple Heather Place Henderson, NV 89052
2540 Purple Heather Place Henderson, NV 89052
2540 Purple Heather Place Henderson, NV 89052

*Total amount due as of today's date is $2,175.69.

This amount includes late fees, collection fees and interest in the amount of $709.69

    * Additional monies will accrue under this claim at the rate of the claimant's regular assessments or special assessments, plus permissible late charges, costs of collection and interest, accruing after the date of the notice.
    Nevada Association Services, Inc. is a debt collector.  Nevada Association Services, Inc. is attempting to collect a debt.  Any information obtained will be used for that purpose.

Dated:  August 17, 2012

*Megan Melin*

By Megan Molina, of Nevada Association Services, Inc., as agent for Club at Madeira Canyon, a planned community

When Recorded Mail To:
Nevada Association Services
TS # N72035
6224 W. Desert Inn Rd, Suite A
Las Vegas, NV 89146
Phone:  (702) 804-8885        Toll Free: (888) 627-5544

# Exhibit 5

Notice of Default & Election to Sell, Doc. No. 20121031-0001396

# Exhibit 5

# Exhibit 5

Inst #: 201210310001396
Fees: $18.00
N/C Fee: $0.00
10/31/2012 08:40:51 AM
Receipt #: 1364377
Requestor:
NORTH AMERICAN TITLE SUNSET
Recorded By: JACKSM    Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN # 190-19-810-122
NAS # N72035
North American Title # 38409
Property Address: 2745 King Louis Street

Accommodation

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER HOMEOWNERS ASSOCIATION LIEN

### IMPORTANT NOTICE

## WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE!

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION and you may have the legal right to bring your account in good standing by paying all your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account. No sale date may be set until ninety (90) days from the date this notice of default was mailed to you. The date this document was mailed to you appears on this notice.

This amount is $3,643.19 as of October 29, 2012 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage, or as required under your Covenants Conditions and Restrictions. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property or pay other obligations as required by your note and deed of trust or mortgage, or as required under your Covenants Conditions and Restrictions, Club at Madeira Canyon, a planned community (the Association) may insist that you do so in order to reinstate your account in good standing. In addition, the Association may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes and hazard insurance premiums.

Upon your request, this office will mail you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Association may mutually agree in writing prior to the foreclosure sale to, among other things, 1) provide additional time in which to cure the default by transfer of the property or otherwise; 2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your Association permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your Association.

To find out about the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: Nevada Association Services, Inc. on behalf of Club at Madeira Canyon, a planned community, 6224 W. Desert Inn Road, Suite A, Las Vegas, NV 89146. The phone number is (702) 804-8885 or toll free at (888) 627-5544.

If you have any questions, you should contact a lawyer or the Association which maintains the right of assessment on your property.

NAS # N72035

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.
## NOTICE IS HEREBY GIVEN THAT NEVADA ASSOCIATION SERVICES, INC.

is the duly appointed agent under the previously mentioned Notice of Delinquent Assessment Lien, with the owner(s) as reflected on said lien being Hamlet McNeace, Shawn L McNeace, dated August 17, 2012, and recorded on August 21, 2012 as instrument number 0002043 Book 20120821 in the official records of Clark County, Nevada, executed by Club at Madeira Canyon, a planned community, hereby declares that a breach of the obligation for which the Covenants Conditions and Restrictions, recorded on May 24, 2005, as instrument number 0002413 BK 20050524, as security has occurred in that the payments have not been made of homeowner's assessments due from 4/1/2012 and all subsequent homeowner's assessments, monthly or otherwise, less credits and offsets, plus late charges, interest, trustee's fees and costs, attorney's fees and costs and Association fees and costs.

That by reason thereof, the Association has deposited with said agent such documents as the Covenants Conditions and Restrictions and documents evidencing the obligations secured thereby, and declares all sums secured thereby due and payable and elects to cause the property to be sold to satisfy the obligations.

Nevada Association Services, Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose.

Nevada Associations Services, Inc., whose address is 6224 W. Desert Inn Road, Suite A, Las Vegas, NV 89146 is authorized by the association to enforce the lien by sale.

Legal_Description: PROVENCE CNTRY CLUB PARCEL 1, PLAT BOOK 121, PAGE 93, LOT 216, BLOCK 7 in the County of Clark

Dated: October 29, 2012

By: Autumn Fesel, of Nevada Association Services, Inc.
on behalf of Club at Madeira Canyon, a planned community

When Recorded Mail To:
Nevada Association Services, Inc.
6224 W. Desert Inn Road, Suite A
Las Vegas, NV 89146
(702) 804-8885
(888) 627-5544

# **Exhibit 6**

Notice of Foreclosure Sale, Doc. No. 20131004-0001613

# **Exhibit 6**

# **Exhibit 6**

Inst #: 201310040001613
Fees: $18.00
N/C Fee: $0.00
10/04/2013 11:42:06 AM
Receipt #: 1798777
Requestor:
**TITLE SOLUTIONS, INC.**
Recorded By: ECM   Pgs: 2
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

RECORDING COVER PAGE
(Must be typed or printed clearly in BLACK ink only
and avoid printing in the 1" margins of document)

APN# 190-19-810-122

(11 digit Assessor's Parcel Number may be obtained at:
http://redrock.co.clark.nv.us/assrrealprop/ownr.aspx)

## TITLE OF DOCUMENT
### (DO NOT Abbreviate)

Notice of Foreclosure Sale

**Document Title on cover page must appear EXACTLY as the first page of the
document to be recorded.**

RECORDING REQUESTED BY:

Nevada Association Services

RETURN TO: Name Nevada Association Services

Address 6224 W. Desert Inn Road

City/State/Zip Las Vegas, NV 89146

MAIL TAX STATEMENT TO:  (Applicable to documents transferring real property)

Name

Address

City/State/Zip

This page provides additional information required by NRS 111.312 Sections 1-2.
An additional recording fee of $1.00 will apply.
To print this document properly—do not use page scaling.

APN # 190-19-810-122                                    NAS # N72035
Club at Madeira Canyon, a planned community

## NOTICE OF FORECLOSURE SALE

**WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE. YOU MUST ACT BEFORE THE SALE DATE. IF YOU HAVE ANY QUESTIONS, PLEASE CALL NEVADA ASSOCIATION SERVICES, INC. AT (702) 804-8885. IF YOU NEED ASSISTANCE, PLEASE CALL THE FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION, AT 1-877-829-9907 IMMEDIATELY.**

YOU ARE IN DEFAULT UNDER A DELINQUENT ASSESSMENT LIEN, August 17, 2012. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NOTICE IS HEREBY GIVEN THAT on 11/1/2013 at 10:00 am at the front entrance to the Nevada Association Services, Inc. 6224 West Desert Inn Road, Las Vegas, Nevada, under the power of sale pursuant to the terms of those certain covenants conditions and restrictions recorded on May 24, 2005 as instrument number 0002413 BK 20050524 of official records of Clark County, Nevada Association Services, Inc., as duly appointed agent under that certain Delinquent Assessment Lien, recorded on August 21, 2012 as document number 0002043 Book 20120821 of the official records of said county, will sell at public auction to the highest bidder, for lawful money of the United States, all right, title, and interest in the following commonly known property known as: 2745 King Louis Street, Henderson, NV 89044. Said property is legally described as: PROVENCE CNTRY CLUB PARCEL 1, PLAT BOOK 121, PAGE 93, LOT 216, BLOCK 7, official records of Clark County, Nevada.

The owner(s) of said property as of the date of the recording of said lien is purported to be: Hamlet McNeace, Shawn L McNeace

The undersigned agent disclaims any liability for incorrectness of the street address and other common designations, if any, shown herein. The sale will be made without covenant or warranty, expressed or implied regarding, but not limited to, title or possession, or encumbrances, or obligations to satisfy any secured or unsecured liens. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $7,507.76. Payment must be in cash or a cashier's check drawn on a state or national bank, check drawn on a state or federal savings and loan association, savings association or savings bank and authorized to do business in the State of Nevada. The Notice of Default and Election to Sell the described property was recorded on 10/31/2012 as instrument number 0001396 Book 20121031 in the official records of Clark County.

Nevada Association Services, Inc. is a debt collector. Nevada Association Services, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose.

October 2, 2013

Nevada Association Services, Inc.
6224 W. Desert Inn Road, Suite A
Las Vegas, NV 89146   (702) 804-8885, (888) 627-5544

When Recorded Mail To:
Nevada Association Services, Inc.
6224 W. Desert Inn Road, Suite A
Las Vegas, NV 89146

By: Elissa Hollander, Agent for Association and employee of Nevada Association Services, Inc.

# Exhibit 7

Foreclosure Deed, Doc. No. 20140331-0002267

# Exhibit 7

# Exhibit 7

Inst #: 20140331-0002267
Fees: $18.00 N/C Fee: $0.00
RPTT: $2414.85 Ex: #
03/31/2014 12:03:32 PM
Receipt #: 1978053
Requestor:
TITLE SOLUTIONS, INC.
Recorded By: RYUD   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

Please mail tax statement and
when recorded mail to:
**S F R Investments Pool 1, LLC**
**5030 Paradise Road, B-214**
**Las Vegas, NV 89119**

## FORECLOSURE DEED

APN # 190-19-810-122
North American Title #38409

NAS # N72035

The undersigned declares:

Nevada Association Services, Inc., herein called agent (for the Club at Madeira Canyon, a planned community), was the duly appointed agent under that certain Notice of Delinquent Assessment Lien, recorded August 21, 2012 as instrument number 0002043 Book 20120821, in Clark County. The previous owner as reflected on said lien is Hamlet McNeace, Shawn L McNeace. Nevada Association Services, Inc. as agent for Club at Madeira Canyon, a planned community does hereby grant and convey, but without warranty expressed or implied to: S F R Investments Pool 1, LLC (herein called grantee), pursuant to NRS 116.31162, 116.31163 and 116.31164, all its right, title and interest in and to that certain property legally described as: PROVENCE CNTRY CLUB PARCEL 1, PLAT BOOK 121, PAGE 93, LOT 216, BLOCK 7 Clark County

AGENT STATES THAT:

This conveyance is made pursuant to the powers conferred upon agent by Nevada Revised Statutes, the Club at Madeira Canyon, a planned community governing documents (CC&R's) and that certain Notice of Delinquent Assessment Lien, described herein.  Default occurred as set forth in a Notice of Default and Election to Sell, recorded on 10/31/2012 as instrument # 0001396 Book 20121031 which was recorded in the office of the recorder of said county. Nevada Association Services, Inc. has complied with all requirements of law including, but not limited to, the elapsing of 90 days, mailing of copies of Notice of Delinquent Assessment and Notice of Default and the posting and publication of the Notice of Sale. Said property was sold by said agent, on behalf of Club at Madeira Canyon, a planned community at public auction on 3/28/2014, at the place indicated on the Notice of Sale.  Grantee being the highest bidder at such sale, became the purchaser of said property and paid therefore to said agent the amount bid $17,000.00 in lawful money of the United States, or by satisfaction, pro tanto, of the obligations then secured by the Delinquent Assessment Lien.

Dated: March 28, 2014

By Elissa Hollander, Agent for Association and Employee of Nevada Association Services

STATE OF NEVADA )
COUNTY OF CLARK )

On March 28, 2014, before me, M. Blanchard, personally appeared Elissa Hollander personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in his/her authorized capacity, and that by signing his/her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and seal.

(Seal)                                        (Signature)



M. BLANCHARD
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 11-5-2017
Certificate No: 09-11646-1

*M. Blanchard*

Order: 8454349
Doc: NV;CL;DYBP;2014.0331.2267

*Document Retrieval : FASTSearch ®*

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1. Assessor Parcel Number(s)
   a. <u>190-19-810-122</u>
   b. _____
   c. _____
   d. _____

2. Type of Property:
   | | | | |
   |---|---|---|---|
   | a. ☐ Vacant Land | b. ☑ Single Fam. Res. |
   | c. ☐ Condo/Twnhse | d. ☐ 2-4 Plex |
   | e. ☐ Apt. Bldg | f. ☐ Comm'l/Ind'l |
   | g. ☐ Agricultural | h. ☐ Mobile Home |
   | ☐ Other | |

   FOR RECORDERS OPTIONAL USE ONLY
   Book_____ Page:_____
   Date of Recording: _____
   Notes:

3. a. Total Value/Sales Price of Property        $ 17,000.00
   b. Deed in Lieu of Foreclosure Only (value of property (                    )
   c. Transfer Tax Value:        $ 473,166.00
   d. Real Property Transfer Tax Due        $ 2,414.85

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section_____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: <u>100</u> %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____  Capacity: NAS Employee/Agent for HOA

Signature _____  Capacity: _____

| **SELLER (GRANTOR) INFORMATION** | **BUYER (GRANTEE) INFORMATION** |
|---|---|
| **(REQUIRED)** | **(REQUIRED)** |
| Print Name: Nevada Association Services | Print Name: S F R Investments Pool 1, LLC |
| Address: 6224 W. Desert Inn Road | Address: 5030 Paradise Road, B-214 |
| City: Las Vegas | City: Las Vegas |
| State: NV        Zip: 89146 | State: NV        Zip: 89119 |

**COMPANY/PERSON REQUESTING RECORDING (Required if not seller or buyer)**
Print Name: Title Solutions Inc        Escrow #
Address: 2552 Walnut Ave #220
City: Tustin        State: CA        Zip: 92780

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED